NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2240
_____

RICHARD DOUGHERTY,
                                        Appellant

v.

MARSHALLS OF MA, INC.;
TJX COMPANIES, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 08-cv-03443)
District Judge:  Honorable J. Curtis Joyner
_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2012

Before:  AMBRO, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: January 26, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

        Richard Dougherty appeals the District Court's judgment following a jury trial.

We will affirm.

I

Because we write for the parties, we recount only the essential facts and procedural history of the case.

Dougherty was unloading a tractor trailer at a Marshalls store in New Rochelle, New York, when a box filled with dumbbells and weighing approximately thirty pounds struck him in the head. According to Dougherty, his head hit the bulkhead of the trailer as he collapsed, and he lost consciousness for about twenty-five seconds. Though Dougherty claims his face was bleeding when he woke, he did not seek medical attention and drove his truck back to Philadelphia.

Dougherty sued Marshalls of MA, Inc., and TJX Companies, Inc., for personal injuries he sustained in the accident. Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania, and the case proceeded to trial.

The parties presented conflicting testimony as to Dougherty's symptoms. Dougherty's neurologist, Dr. Michael Martin Cohen, testified that Dougherty suffered a traumatic brain injury and that his "dizziness, memory loss, nausea, fatigue, cognitive balancing, inner ear disease, [and] impairments" were direct results of the incident. Dougherty's otolaryngologist, Dr. Robert Sataloff, also testified that Dougherty's dizziness, balance problems, hearing loss, and inner ear disease stemmed from the accident. Finally, Dougherty's neuropsychologist, Dr. David Massari, testified that Dougherty was suffering from cognitive defects as a result of his injury.

2

Defendants presented testimony to rebut both the existence and severity of Dougherty's injuries and the causal link between the accident and his symptoms. A neuropsychologist, Dr. Paul Moberg, did not "believe that [there was] any evidence of [a] closed head injury from this accident," citing test results suggesting Dougherty was exaggerating symptoms of a concussion. An otolaryngologist, Dr. Douglas Bigelow, testified that Dougherty's hearing loss developed after the incident, not because of head trauma. Finally, a neurologist, Dr. Steven Arnold, testified on direct examination as follows:

> A: [T]here was discrepancy between . . . what [Dougherty] said his daily functioning was like and how he performed on the test. So, . . . I think that this would be consistent with his either voluntarily or involuntarily exaggerating the poor performance.
> . . .
>
> Q: In what type of capacities would you opine that [Dougherty] could work and within a reasonable degree of medical certainty?
>
> A: Could be some light duty or desk-type work.
>
> Q: When you say "light duty," what do you mean by that, Doctor?
>
> A: Well, he does have physical symptoms that have been documented in terms of pain. And, so, from a physical standpoint, he may not be able to do the heavy lifting or the crawling or things like that that he did as a—as a truck driver. . . .
>
> Q: And, Doctor, based upon . . . your review of the records, your interview of Mr. Dougherty, your examination of Mr. Dougherty, do you have an opinion within a reasonable degree of medical certainty as to what his diagnosis or what his condition is?
>
> A: So, I believe that he did have a concussion. I think that he has some

3

persistent symptoms particularly related to his sense of dizziness and balance. He has neck pain and headache. These would be consistent with a persistent post-concussive type of syndrome. I think that given the . . . question of exaggeration of cognitive symptoms, as well as these other symptoms, I think it's impossible to determine whether he has bona fide cognitive deficits that, you know, affect his functioning.

On cross examination, Dr. Arnold consistently maintained that Dougherty's reported symptoms, if believed, were consistent with a mild concussion:

Q: The diagnosis you made after examining Mr. Dougherty, after reviewing all the medical records that you reviewed in this matter, after taking a history from him and . . . based on your experience as a neurologist, you concluded that his diagnosis was a mild traumatic brain injury, persistent post-concussive syndrome and post-traumatic vestibular dysfunction; is that correct?

A: What I said here, the whole sentence[,] was symptomatically Mr. Dougherty's subjective complaints are consistent with diagnosis of a history of mild traumatic brain injury, persistent post-concussive syndrome and post-traumatic vestibular dysfunction. So, if we are to believe all of the symptoms at face . . . then these symptoms would be consistent with these diagnoses.

Q: So, is it your opinion within a reasonable degree of medical certainty, that based upon the symptoms that Mr. Dougherty had[,] and based upon your examining him and taking a history, that . . . the injuries of . . . mild traumatic brain injury, persistent post-concussive syndrome and post-traumatic vestibular dysfunction is a direct result of the . . . work accident he had on December 7, 2006?

A: If it weren't for . . . the subjective nature of many of his symptoms and this question of exaggeration that we had, then, yes, that would be the case. However, there is this question and so I can't be certain.
. . .

Q: In this report you issued, you clearly stated that barring any documentation of any preexisting or subsequent alternative diagnostic considerations, that given the temporal relationship of symptoms to the

4

injury of 12/7/06, these diagnosis [sic] are most likely causally related to the injury of 12/7/06. Did you not state that in your report? Without any conditions on that statement, did you not state that?

A: That's what I wrote here. You do need to appreciate it within the context of this symptomatically, Mr. Dougherty's subjective complaints.

Q: I understand that. But you did based upon your diagnosis made [sic], that these injuries, the traumatic brain injury and post-concussive injury, the vestibular dysfunction[,] you believe are related to the accident of December 7, 2006?

A: If there were none of these other things, yes.

At the conclusion of trial, the jury found Defendants 50% liable and Dougherty 50% liable, but it awarded no damages. Dougherty filed a motion for a new trial, arguing that: (1) the jury's decision not to award damages was against the weight of the evidence; (2) the Court erred in denying his motion for a new jury panel or to strike a replacement juror; and (3) the Court erred in refusing to rule on his objections to deposition testimony. The District Court denied Dougherty's motion, and Dougherty timely filed this appeal.[1]

II

Dougherty claims the District Court erred when it denied his motion for a new trial based on the jury's failure to award damages.[2] We disagree, essentially for the reasons explained by the District Court in its cogent opinion.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[2] Dougherty does not appeal the District Court's ruling on the jury panel and deposition testimony issues.

We review a district court's ruling on a motion for a new trial for abuse of discretion. *Brennan v. Norton*, 350 F.3d 399, 430 (3d Cir. 2003) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735 (3d Cir. 1988)). "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991) (citing *EEOC v. Del. Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1413 (3d Cir. 1989)). Applying this standard, the District Court held that the verdict was not a miscarriage of justice because the jury was entitled to believe Defendants' experts' testimony that Dougherty's injuries were exaggerated, unrelated to his accident, and not significant enough to warrant compensation.[3]

This case "does not approach the high threshold for granting a new trial." *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 128 (3d Cir. 2003). "[A] jury cannot freely ignore evidence of obvious injury," *Neison v. Hines*, 653 A.2d 634, 639 (Pa. 1995), but "[t]he injuries must be uncontroverted," *Van Kirk v. O'Toole*, 857 A.2d 183, 186 (Pa.

---

[3] The District Court noted that we have been inconsistent with respect to whether state or federal law provides the standard for determining whether a plaintiff is entitled to a new trial because of a purportedly inadequate damages award. *See Dougherty v. Marshalls of MA, Inc.*, No. 08-CV-3443, 2011 WL 1562251, at *4 n.2 (E.D. Pa. Apr. 26, 2011). Nevertheless, it ultimately considered both federal and Pennsylvania law, reasoning that "any distinction would not change the decision in this case" because "the standard for denying a new trial under Pennsylvania law is substantially similar to the

Super. Ct. 2004). Thus, "if the defense expert concurs with the opinion of the plaintiff's expert only because of subjective complaints of the plaintiff, and the defense convinces the jury that the plaintiff was not truthful, the basis of [the] diagnosis might fail and a zero verdict would be appropriate." *Id.* In this case, "[t]he jury heard (as is typical) . . . inconsistent testimony from both sides, and could have concluded" that Dougherty was entitled to zero damages. *Grazier*, 328 F.3d at 128.

Dougherty claims there is undisputed evidence of an objective injury, pointing to the following testimony of Defendants' expert, Dr. Arnold: "I believe that [Dougherty] did have a concussion. I think that he has some persistent symptoms particularly related to his sense of dizziness and balance. He has neck pain and headache. These would be consistent with a persistent post-concussive type of syndrome." Contrary to Dougherty's argument, Dr. Arnold did not conclude that Dougherty suffered a concussion as a result of his accident. Dr. Arnold made clear that his conclusion was more limited, emphasizing that Dougherty's subjectively reported symptoms, *if believed*, would be consistent with a concussion:

> If it weren't for . . . the subjective nature of many of his symptoms and this question of exaggeration that we had, then, yes, that would be the case. However, there is this question and so I can't be certain. . . . You need to appreciate it within the context of this symptomatically, Mr. Dougherty's subjective complaints. . . . If there were none of these other things, yes [I would believe the symptoms were related to Dougherty's accident].

standard under federal law." *Id.* As neither party disputes this approach, we need not reach the question of whether state or federal law controls the standard.

The jury was free to credit Dr. Arnold's reservations about Dougherty's symptoms and conclude that Dougherty's subjective complaints were not credible.

Furthermore, Dougherty ignores the wealth of Defendants' other evidence rebutting the existence, severity, and cause of his symptoms. Though Dougherty presented evidence that the accident caused his concussion, the jury was entitled to evaluate Dr. Moberg's and Dr. Bigelow's conflicting testimony and find that Dougherty's concussive symptoms, if real, were caused by something other than the accident.

And even if the jury found that Dougherty suffered a concussion or facial lacerations, it still could have reasonably concluded that the injury was a mere "transient rub of life" and "not severe enough to warrant an award of damages." *Van Kirk*, 857 A.2d at 187. Dougherty drove from New York to Philadelphia immediately after the accident and did not seek medical attention until after he returned home. Additionally, Defendants' evidence suggested that Dougherty was exaggerating his symptoms. For these reasons, the District Court did not abuse its discretion when it denied Dougherty's motion for a new trial.